The Honorable Scott Ferguson State Representative 200 S. Rhodes, Suite B West Memphis, Arkansas 72301-4213
Dear Representative Ferguson:
This official Attorney General opinion is rendered in response to your recent questions regarding the distribution of revenues generated by the fifteen additional days of dog racing that are authorized by A.C.A. §23-111-505.
You note in your correspondence that A.C.A. § 23-111-505, in addition to authorizing fifteen additional days of dog racing, establishes a formula for the distribution of revenues generated during those additional days. Under this formula, all such revenue is to be credited to the Indigent Patients' Hospitalization Fund.
However, subsequent appropriation acts have established different formulae. You specifically reference Acts 1989, No. 211, § 5; Acts 1991, No. 249, § 7; Acts 1993, No. 76, § 7; Acts 1995, No. 637, § 10; and Acts 1997, No. 1358, § 15. Each of these subsequent appropriation acts directs the revenues to the Indigent Patients' Hospitalization Fund, in accordance with the mandate of A.C.A. § 23-111-505, and each such act has set aside $500,000.00 for defraying the cost of hospitalization and medical services of indigent Arkansas patients in out-of-state hospitals. However, Act 992 of 1993 amended the language of Act 249 of 1991 so as to provide for a transfer of $200,000.00 of the $500,000.00 to the Arkansas Department of Health. This amendment created a conflict with Act 76 of 1993, which did not provide for such a transfer. You note that the transfer provided for by Act 992 of 1993 was allowed despite the conflict, pursuant to the provisions of A.C.A. § 1-2-207 (which allows conflicting acts of the same session to be read together), and because Act 992 prevailed in any event, because it was signed later in time by the governor.
You further note that none of the appropriation acts that have been enacted since 1993 and which purport to distribute this additional dog racing revenue provide for the transfer described in Act 992 of 1993. Moreover, the acts passed since 1993 contain complete formulae for the distribution of the revenue and do not refer to previous acts.
In light of the above history, you have presented the following questions:
 (1) Is the fund transfer that was provided for in Act 992 of 1993 still authorized?
 (2) May funds that were transferred in 1995 or 1996 be recovered by the Indigent Patients' Hospitalization Fund?
(3) What procedure would be necessary to recover the funds?
RESPONSE
Question 1 — Is the fund transfer that was provided for in Act 992 of1993 still authorized?
It is my opinion that the fund transfer that was provided for in Act 992 of 1993 is no longer authorized.
This conclusion is based upon two legal considerations. First, Article5, § 29 of the Arkansas Constitution provides that "no appropriation shall be for a longer period than two years." The Arkansas Supreme Court has stricken down appropriations that violated this two-year limitation.See, e.g., Jobe v. Caldwell, 93 Ark. 503, 125 S.W. 423 (1910); Moore v.Alexander, 85 Ark. 171, 107 S.W. 395 (1908). Accordingly, if the provisions of Act 992 went into effect for the fiscal year beginning July 1, 1993, it could only have been authorized through the fiscal year ending June 30, 1995.
Second, it is a well-established principle of law that when two acts address the same subject, and the latter act covers the entire subject of the earlier act, but omits certain language contained in the earlier act, the latter act operates to repeal the earlier act, including the omitted language. See, e.g., Smith v. Bentley, 493 F. Supp. 916 (E.D. Ark. 1980); Nance v. Williams, 263 Ark. 237, 564 S.W.2d 212 (1978);Purcell v. Jones, 242 Ark. 168, 412 S.W.2d 284 (1967). Thus, when the next appropriation act (after Act 992 of 1993) was passed addressing the distribution of the dog-racing revenues [Act 637 of 1995], it superseded Act 992 of 1993, going into effect for the fiscal year beginning July 1, 1995.
Upon the basis of these authorities, I must conclude that the transfer authorized in Act 992 of 1993 is no longer authorized.
Question 2 — May funds that were transferred in 1995 or 1996 be recoveredby the Indigent Patients' Hospitalization Fund?
It is my opinion that the Indigent Patients' Hospitalization Fund could make a viable claim for any funds that were transferred after June 30, 1995. Such a claim would be viable, in my opinion, for the reasons set forth in response to Question 1. Funds transferred after June 30, 1995 were transferred without authorization and, by virtue of the law that was in effect at that time, rightfully belonged to the Indigent Patients' Hospitalization Fund. See Acts 1995, No. 637, § 10.
Of course, the success of such a claim will turn upon the facts that representatives of the Fund can establish before the decision-making authority indicating both the wrongful transfer of the revenues, and the Fund's entitlement to the wrongfully transferred revenues.
Question 3 — What procedure would be necessary to recover the funds?
It is my opinion that the funds should be recovered through the procedures that have been established by the Chief Fiscal Officer of the State (i.e., the Director of the Department of Finance and Administration) pursuant to A.C.A. § 19-5-106. That section authorizes the Chief Fiscal Officer to direct various types of transfers of state funds among various state entities. Questions regarding the details of such procedures should be directed to the Department of Finance and Administration.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh